and if you are the appellant, if you wish to please go to the podium and state your appearance. If it may please the court, Attorney Yofi for the petitioner, Jihong Bao. We're recording, so if you can maybe raise your voice just a little bit. Yes, Your Honor. I would like to reserve two minutes if possible. All right. Thank you. May I begin? Yes, please do. Your Honor, the theory of this case for us is simple. It's an adverse credibility finding that we don't believe is substantially supported. I would point out there's zero substantive inconsistencies that were pointed out by the board. Okay, but it is the Real ID Act. It is the Real ID Act, Your Honor. So that makes it a little more difficult. Yes, Your Honor. So what evidence in the record supports your position that the IHJ's adverse credibility was not supported by substantial evidence? Yes, Your Honor. Under Lievey Holder, which in this court found that omissions are less probative than inconsistencies. So that's our point number one. So the two minor omissions are supplementary in nature, Your Honor. He does mention being hit in the face, so the judge claims the only omission is that his nose was bleeding. That is extremely minor. Petitioners and applicants always expound on their harm. I mean, it can be minor if it's inconsistent. But it's an omission, Your Honor. I mean, because under the Real ID Act, the IJ bases her decision on the totality of the circumstances. So was there evidence that the IJ did not consider in making her credibility determination? Your Honor, I think she considered all the evidence but arrived at an incorrect conclusion, according to the president of this court, that states that omissions are less probative than outright inconsistencies. And the two omissions are extremely minor in nature. He doesn't mention that the family planning authority saw his wife vomit. Why would anybody put that in the statement in the first place? Well, I think the IJ did address it and said if you were there at the family planning and one of the symptoms of being pregnant is, and I see that I have some women in the audience, and women that have had morning sickness know that sometimes there's some vomiting and upchucking that goes along. And if she was trying to conceal her pregnancy, why wouldn't she close the bathroom door as she runs in? I mean, that's what the IJ said. Right. So that goes to the other element of the case, which is the two plausibility findings, which we argue are complete speculation and conjecture, where the judge goes ahead and dictates how somebody ought to behave in this situation, and she doesn't consider that these are poor and sophisticated farmers and not somebody who has the benefit of hindsight and knows that in four days they will be forced to have an abortion. Can I ask a question? Yes, Your Honor. What is the standard for the plausibility? I understand if there's an inconsistent statement, it's very difficult to get those overturned. Correct. And I actually agree with your position on the omissions. The plausibility, though, I'm having a hard time figuring out what the standard is, and I actually think our law isn't crystal clear on that. Yes, Your Honor. So I looked up a couple cases, and the one I found that seems to pertain it is the court held that skepticism as to the plausibility of the testimony may in certain circumstances be a proper basis for finding that the testimony is not believable if the IJ's logical inferences are supported by substantial evidence. Isn't that just roll the substantial evidence test back into the plausibility, though? That's confusing to me. Right. Your Honor, I mean, it seems to me that if the judge had all the facts in front of her, then she could make some findings as to whether or not this was plausible. But in this case, despite the petitioner's explanations of his behavior, the judge said, well, this is not reasonable. And I think in this case she went beyond in trying to re-suppose how they should act, and there's a number of cases that say the judges should not act as experts and should not dictate how the documents should look and what they should do in the situation. So that's our position. Okay, but the way you're explaining it, what I'm hearing is the judge considered everything, but then the judge sought differently than you think the judge should have seen it. And, I mean, if I give you an example, like, say, in criminal law there's something called flight, and jurors can be instructed that it could be consciousness of guilt, running off, but then on the other hand people can look at it differently and say, well, maybe he didn't run because he had a cast on his foot. Well, that being, if a court was, if a judge were confronted with that and decided that the person ran when they were to get away from the crime scene, as opposed to that maybe they were sort of slowed down by a cast or whatever, that, you know, why isn't that just a different way to look at it? And if it's a different way to look at it, you lose, right? Well, I understand your point, Your Honor. And, yes, of course the judge is allowed to look at it in different ways, but then we would not have all these cases about speculation and conjecture. I mean, there's obviously a line between where the judge can make inferences and think, okay, well, this doesn't make any sense, as opposed to what the judge did in this case where she said this is not reasonable how these people acted in this situation, which is speculation. Okay, so you have that not shutting the door when she was throwing up at the family planning. What's the other area that you're saying that was speculation? The other area is the judge says they were warned twice but still did not escape. So the judge says the four days they had, it's not reasonable. He's such a gung-ho gentleman. He's so upset about it. Doesn't that go to credibility? The plausibility of it, Your Honor, yes. But, I mean, I'm arguing that the judge is imposing how this person should have acted was a benefit of hindsight, Your Honor, and he is not in the position of a judge. He's just a poor farmer with no education, and he even testified, Your Honor, I didn't think they would come so fast. So he gave some reasons. We were getting ready. The ant wasn't ready. We were trying to get her permission. I didn't think they would come so fast, but yet they did, and the judge says, well, that's not reasonable, sir. You should have known after the warning that they would come so fast and force you. Would it be reasonable to take four days to get out of the building? Well, of course not, Your Honor. Okay, so it depends on, it's very fact-specific, right? It's very fact-specific, and he did take efforts in this case. You know, he said he started buying the tickets. He called his ant, and he was waiting for permission for the ant to clear them coming over, Your Honor. And, I mean, we have to put ourselves in the position, this is 20 years ago in the countryside, poor farmers, the authorities come and say we might come and take your wife away. I mean, the life might move at a different pace there, and the judge, I think, in this occasion, a little overstepped her bounds and imposed her maybe Western thinking on how these farmers should have acted. So you talked about we have to look at the position he was in. Yes. You also have to look at the position we're in. Yes, Your Honor. Which complicates your argument a bit, I believe. We're looking here as whether or not there is substantial evidence to support the BIA's determination that the immigration judge did not clearly err. Okay. Yes, Your Honor. So that's a heavy burden of yours. Heavy burden. In fact, the standard review is that we cannot say that any reasonable adjudicator would have been compelled to conclude otherwise. That's a very strict standard. I understand, Your Honor. Any reasonable adjudicator. It means anybody. I would just point out that, again, his testimony didn't have any inconsistencies, which is usually what the court hangs their hat on. And I just think the judge was grasping at straws and trying to deny this gentleman maybe his claim wasn't that weak. She never is strong. She didn't address past persecution. But these points she pointed out are just not enough to support that. So if we agreed with you on the adverse credibility determination, if there wasn't substantial evidence, what should we do with this case? It would have to be remanded, Your Honor, for a finding of past persecution because it was not addressed. And may I save my last minute, Your Honor? Yes. Thank you so much. I'll give you two minutes. Oh, thank you, Your Honor. I neglected to introduce our colleague from Pittsburgh, Pennsylvania, Judge Fisher, who is sitting with us on assignment. Thank you, Judge. Well, Nelson and I welcomed him, and so you'll know who it is. You already knew. I looked it up. You already looked him up. I know. We're all out there. But, anyway, that was my bad. Thank you. All right. We're ready to hear the government's argument. Good morning. Good morning. May it please the Court, Victoria Braga, appearing on behalf of the Attorney General. The Court should deny this petition for review because the record does not compel a conclusion contrary to the agencies that Mr. Bowe testified incredibly. Mr. Bowe embellished his oral testimony in two instances. He also offered an implausible account of his past experiences. Concerning first the testimonial embellishments, Mr. Bowe embellished his testimony first by adding the incident in which he described his wife vomiting in front of family planning officials. This Court has recently addressed the difference between the mere omission of details and telling a much different and more compelling story during oral testimony. And that case is Silva Pereira v. Lynch, which is a case that the Court decided in 2016. Can I ask a question about that, though? Why is that a more compelling story that his wife vomited in the bathroom? How does that help his asylum claim? I think it's a more compelling story because of the scene that that story paints. He testifies that that is the precipitating event for his entire claim, basically. And the Court addressed a similar situation in a case cited in Silva Pereira, Alvarez-Santos v. INS, where the Court… Why is that? I don't understand why that's the precipitating event for his claim. I thought his claim was, whether you believe him or not, his claim is, I'm opposed or I'm persecuted, and my wife is persecuted because of the one-family rule. And, in fact, they wanted to sterilize him, and so he left China. So I don't understand how it seems like a pretty attenuated link to go to say that was going to rise or fall based on him adding this statement that his wife was vomiting in the bathroom. Well, I think it's not necessarily adding this statement, but I do think that the claim is based on the fact that his wife was pregnant, and none of this would have ever happened had family planning officials not discovered the pregnancy. But there's no dispute that she was pregnant. I guess that's where I'm getting hung up, because if she'd been pregnant, the same thing would have happened. If she'd thrown up, I mean, we all know what happened. She got a forced abortion from the government, and whether she threw up seems to have little, if any, bearing on any of this, except perhaps that's how they found out. And also the IJ really turned the screws and used it, like any good prosecutor might, to say, well, you would have shut the door then if you wouldn't, you know, and so then used that to say that that's another reason that he wasn't credible. Not just that it was an embellishment, but it's like that just isn't plausible either, because if you were trying to hide your pregnancy, why would you leave the door open for everyone to see that you were vomiting in the bathroom, right? Right. Well, I think that the IJ's use of it in both respects shows that it is a detail that is essential to his claim. It's a detail that you would expect, especially based on the way that he describes it in testimony, how he says she rushed to the bathroom and she vomited in the sink. It's a detail that just the IJ is saying you would have expected this to be in a statement. It's not just a mere omission of something that has no bearing on your claim. But back up. Is the government's position it's an omission or that it's an inconsistency? The government's position is that it is an embellishment. So it would be not an inconsistency, but an omission from the written statement. And then, but more importantly, it is an embellishment in his oral testimony. And similarly, another embellishment in his oral testimony is the fact that he was bleeding because he was abused by police officers. Was it at the nose bleed or something? Yes. He said his nose was bleeding. Based on the fact that this is an asylum claim based on persecution, you would expect, or the IJ was reasonable in expecting that any injuries and any resulting harm that he suffered should have been in his application. And just adding this detail during his testimony does qualify as an embellishment that could support an adverse credibility claim. Is it an embellishment or is it an inconsistency from the standpoint that it would be like if I said that someone beat me with a stick and that was all that I said and then later when I came and testified, I said that they pulled my, they broke my hands there or something like that. Is that an embellishment or is that just an inconsistency or what is that something that you would think you would put your worst injuries forward? Is that, but I don't know, what do you call that? I don't think it's necessarily inconsistent to provide the bare minimum details and then to provide further details. I see an inconsistency as two different statements, things that could not possibly exist or happen at the same time. So I think it's more appropriate to characterize this as an embellishment. But isn't an embellishment than an omission because that you would be expected, if that would be important to your case, why would you leave it out unless you're making it up? Right, I think an embellishment and an omission sort of go hand in hand. Here there's the omission from the written statement, meaning that the testimony is embellished. I think that inconsistencies are different. So here I think we do have the omission from the written statement, but why it's important to the adverse credibility finding and how both the IJ and the board characterize it are as an embellishment. Isn't there a fine line here between these omissions and embellishments and just mere details? And how about the case of Bandari from 2000, the Ninth Circuit case, that called similar embellishments in that case merely details? I mean, it just seems like it's a very fine line here. I would agree that it is a fine line, but I think that brings us back to the standard of review here, and the standard of review is for substantial evidence. So if we're in a situation where it is a fine line, whether this is an embellishment or just the omission of a mere detail, the record doesn't necessarily compel a conclusion that's contrary to that of the agencies, that it is an embellishment supporting an adverse credibility finding. But doesn't substantial have some meaning? I mean, I see some evidence here to support, but does that rise to the level of being substantial evidence? I think it would rise to the level in that the court must affirm an IJ's finding as long as any reasonable adjudicator could make that finding. So some evidence, I think, in the minds of some adjudicators would be enough. Additionally, in this case, as Your Honors mentioned, there are implausibilities about Mr. Bowe's testimony. The most striking implausibility, I think, is that he and his wife did not act more quickly in moving her into hiding, and Petitioner was, I think, mischaracterizing the IJ's finding on this implausibility a little bit during his argument. So the IJ wasn't necessarily saying it was implausible that they didn't move more quickly in general. She was saying it was implausible that they didn't move more quickly, given his testimony that the moment that they found out his wife was pregnant, their plan was to move her into hiding. So the fact that— Was there any testimony about how long it would take someone to move into hiding? I mean, that's what I'm struggling with here is if we rule in your favor, we're allowing an IJ to come up with any speculation about why someone would have done something differently. There's got to be some line. There's got to be some guiding principle to this. Well, I'm not sure if there would be a guiding principle, because I think it is based on the circumstances of every case, and I think that's why the IJ relied so heavily on the fact that he did say our immediate plan was to move her into hiding. Yet there's a passage of somewhere between four to seven days, and she doesn't move into hiding. And I think that the IJ, again, looked at the circumstances specific to this case and said, you know, I sort of don't understand why. And that's a reasonable conclusion, given here that the aunt had already been contacted, that it didn't seem that there needed to be many arrangements made. Mr. Bao himself said he would be staying home. His mother was also home. They had one daughter that he and his mother could have cared for. And it seems like, you know, the plans, as Petitioner said, they had looked into tickets. She had started to pack her luggage. And this is all in the midst of two other warnings. It's just implausible that in those circumstances you're essentially ready to go, but you just don't take that final step. You essentially wait for the family planning officials to come. What if it had just been one day? Would that be also implausible? If they had come the next day, and would we be justified in upholding the IJ's determination that it's absolutely implausible that they would have left within one day? I think it would have depended on the circumstances of the case. That certainly would be a harsher finding by the IJ. But here it clearly is more than one day. Yeah, but it's four days. If it's eight months, okay. But that's the struggle I have, is if we ruin the government's favor here, we're giving sort of carte blanche to these IJs to just come up with anything. I would have done it differently. And then we're stuck saying, well, IJ said she would have done it differently. So that's the end of the story. I see my time has concluded. May I briefly respond? Yes. Thank you. So, again, I think that the IJ is not saying just generally that things should have been done differently. She's saying that here, given these circumstances and given his testimony and given the facts that it seems that it would have been easy in these four days or it would have been plausible in these four days for Mr. Bao to move his wife into hiding. It's just an implausibility here in this case that supports the adverse credibility finding. If I understand your argument, you're relying on the standard of review. You're relying on the REAL ID Act, and you're basically respectfully saying, yeah, the IJ was there, that we're here. And so under those circumstances that there isn't that, you know, if we were to not agree with the IJ, we would be interjecting our own judgment, which a different fact finder could have been free to do. Yes, Your Honor. We are arguing that substantial evidence supports the adverse credibility finding and the record does not compel a contrary conclusion to that of the agencies. All right. Thank you for your argument. Thank you. All right. You have two minutes for rebuttal. Your Honors, I'd like to address two points. It is clearly detailed. If you look at the statement, Your Honor, he says, as we were trying a way to keep the child, the family planning office found out or rather suspected that my wife was pregnant. So he already alludes to it. So the vomiting incident is simply him expounding on the incident. It is not embellishing. He also says, when I still refused to leave, one guard punched me in my face. He doesn't embellish, Your Honors. He doesn't make up new injuries. Now, if he made up some new injuries and said they also beat me with a baton and I had concussion, that would be a significant omission that could sink his whole case. Instead, we just have minor addition, details, as the court mentioned in Bandari. The other case, the counsel kept mentioning, it doesn't seem like, it doesn't seem like. That is unsupported disbelief. As the court pointed out, there's just not substantial evidence here for the judge to arrive at the conclusions that she did. There is not some standard to compare it to. This is simply her own belief as to how this man should have behaved. And I do believe that the court ought to be compelled to find that substantial evidence does not support this adverse credibility finding and rule in the petitioner's favor. All right, thank you both for your argument. Thank you, Your Honors. The amendment will stand submitted. The next matter on the calendar is Shang Min Xing v. William Barr, case number 1671241. That matter has been submitted on the briefs.
judges: Fisher, Callahan, Nelson